UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

RYAN GUILLOT,

       Plaintiff,

v.

COWHAND SADDLERY, LLC d/b/a
COWHAND SERVICES, et al.,

       Defendants.

No. 6:23-CV-044-H

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is United States Magistrate Judge John R. Parker's Findings,

Conclusions, and Recommendations (FCR) (Dkt. No. 133) on the resolution of the parties'

Agreed Notice of Settlement (Dkt. No. 129) and Motion to Approve Settlement (Dkt. No.

130). Also before the Court are the plaintiff's objections to the FCR (Dkt. No. 135). The

FCR recommends that the Court deny in part the Motion to Approve Settlement to the

extent that motion seeks vacatur of Judge Parker's prior order imposing sanctions on the

plaintiff and his counsel (the Sanctions Order). *See* Dkt. No. 133 at 14. The plaintiff makes

four objections, arguing that the FCR errs by not agreeing to vacate the Sanctions Order.

*See* Dkt. No. 135. The Court overrules the plaintiff's objections and adopts the FCR.

## 1.    Factual and Procedural Background

This case concerns a wage-and-hour dispute under the Fair Labor Standards Act. *See*

Dkt. No. 41. The plaintiff argues that the defendants improperly classified him as an

independent contractor, thus depriving him of overtime pay. *Id.* at 5–10. Previously, the

defendants moved to compel the production of the plaintiff's tax returns after the plaintiff

refused to produce his tax returns from certain years. *See* Dkt. No. 60. Judge Parker issued

an order requiring the plaintiff to produce his tax returns for tax years 2019 through 2023

and to "fully respond" to the request for tax returns within ten days of that order.  Dkt. No. 82 at 11.

The plaintiff amended his responses to the defendants' requests for production to state that he had requested his tax returns from the IRS and would produce them when he received them from the IRS.  *See* Dkt. No. 108 at 10–11.  He did not produce the tax returns to the defendants within ten days of the discovery order or seek relief from the ten-day deadline.  *See* Dkt. No. 107 at 19, 28.  On September 24, 2024, the defendants moved for a show-cause order, requesting that the plaintiff be required to establish why he had not complied with his discovery obligations.  Dkt. No. 94.

Judge Parker held a hearing on the show-cause motion.  During that hearing, Judge Parker heard argument regarding whether the plaintiff had failed to comply with his discovery order.  *See* Dkt. No. 105.  At the conclusion of the hearing, Judge Parker determined that sanctions were merited because the plaintiff and his counsel had failed to comply with the discovery order.  *See id.* at 22–24.  The written Sanctions Order followed.  Dkt. No. 101.  The plaintiff timely filed objections.  Dkt. Nos. 106–08.  This Court overruled the objections and affirmed the Sanctions Order in full.  Dkt. No. 113.

The parties decided to engage in mediation but failed to reach a resolution of the case.  *See* Dkt. No. 118.  However, after the mediation, the parties reached a settlement.  *See* Dkt. No. 122.  The defendants moved to enforce the settlement after the plaintiff sought to renege on the agreement.  *See id.*  The plaintiff then moved for summary judgment.  *See* Dkt. No. 125.  However, it appears that the parties were subsequently able to resolve their differences, and they jointly moved to vacate all pending deadlines (Dkt. No. 129) and requested approval of their settlement (Dkt. No. 130).  The FCR recommends denying in

– 2 –

part the Motion for Approval of Settlement (Dkt. No. 130). *See* Dkt. No. 133 at 13.

Resolution of the motion to vacate all pending deadlines depends on this Court's resolution

of objections to the FCR and on the parties' response to this Order. *See id.*

### 2.    Review of the Magistrate Judge's Recommendations

When a party files objections to a magistrate judge's recommendations, the Court

must determine de novo those parts of the magistrate judge's disposition to which a party

has specifically objected. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th

Cir. 1994); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). However, as for portions where

no specific objections are filed within the 14-day period, the Court reviews the magistrate

judge's findings and recommendations only for plain error. *Serrano v. Customs & Border

Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020).

### 3.    Analysis

The Court has carefully considered the FCR, the plaintiff's objections, the relevant

portions of the record, and the applicable law. Having considered the plaintiff's objections

and reviewed de novo those portions of the FCR to which the plaintiff objected, the Court

overrules the plaintiff's objections and adopts the FCR.

Before addressing Guillot's objections to the FCR, it bears noting that this case is, in

all material respects, indistinguishable from the Fifth Circuit's opinion in *Fleming &

Associates v. Newby & Tittle*, 529 F.3d 631 (5th Cir. 2008). In *Fleming*, the defendants

discovered during the deposition of the plaintiffs' expert witness that the plaintiffs' counsel

had made revisions to the expert's report. *Id.* at 635–36. The district judge conducted an

emergency hearing on the matter and later issued an order sanctioning the plaintiffs' counsel

(the sanctions order). *Id.* at 636. In the sanctions order, the district judge found that the

plaintiffs' counsel had modified certain portions of the expert report and that the counsel should be "sanctioned for changing the expert witness's report and shall pay to the [defendants] the reasonable attorneys['] fees incurred by [the defendants]" for bringing a motion to exclude the expert testimony.  *Id.*  The court ordered the defendants to submit fee affidavits on which the court could calculate the sanctions amount.  *Id.*

After entry of that sanctions order but before the district judge entered an order with the final monetary sanctions award, the parties settled the case.  *Id.*  As part of the settlement, the parties agreed that each side would bear its own attorneys' fees, and the defendants "agreed to withdrawal of the sanctions order."  *Id.*  The district court nevertheless referred the attorneys' fee issue to a magistrate judge, who held a hearing on the issue and ordered the plaintiffs' counsel to pay over $15,000 in attorneys' fees and expenses to the defendants (the fee award).  *Id.*

On appeal, the Fifth Circuit agreed to vacate the fee award but not the sanctions order.  *Id.* at 640.  The Fifth Circuit determined that the fee award was subject to either mandatory or equitable vacatur, because either (1) "the issue of monetary sanctions was moot" after the settlement, or (2) the settlement mooted any appeal of the compensatory portion of the district court's sanctions.  *Id.*  In doing so, the Fifth Circuit recognized that parties may agree to settle sanctions that compensate the opposing party.  *Id.*  However, the Fifth Circuit held that neither mandatory nor equitable vacatur of the sanctions order was appropriate.  The Fifth Circuit first recognized that "the sanctions issue could not have become moot before the settlement," so mandatory vacatur did not apply, as the district court had jurisdiction when it issued the initial sanctions order.  *Id.*  Next, the Fifth Circuit held that "equitable vacatur is not appropriate because the [sanctions] order is nevertheless

– 4 –

appealable" notwithstanding the settlement, as "[a]ny non-monetary portion of the sanctions not rendered moot by the settlement is appealable for its residual reputational effects on the attorney." *Id.* (citing *Walker v. City of Mesquite*, 129 F.3d 831, 832–33 (5th Cir. 1997)).  The Fifth Circuit thus agreed that "parties generally cannot bargain away the court's right to impose sanctions" and that "where a district court has reviewed a case of misconduct and issued a well[-]reasoned sanctions order, we should not allow a subsequent settlement to erase that language." *Id.* at 640–41.

This case closely tracks the material facts of *Fleming*, except for the district court's entry of the fee award.  Here, after the plaintiff failed to comply with a discovery order, Judge Parker held a hearing on the defendants' motion for an order to show cause and determined that the plaintiff had violated his prior discovery order.  *See* Dkt. No. 105.  After the hearing, Judge Parker issued the Sanctions Order, which found that the plaintiff "and his counsel failed, without substantial justification, to comply with the Court's July 3 Order, as they did not" comply with their discovery obligations under that order.  Dkt. No. 101 at 1–2.  The Sanctions Order, like that in *Fleming*, set forth this finding of sanctionable conduct and ordered the plaintiff and his counsel "to pay reasonable expenses, including attorney fees, incurred by [the defendants] and their counsel in filing" the show cause motion.  *Id.* at 3–4.  Like in *Fleming*, Judge Parker ordered the defendants to file a motion for expenses and fees supported by an appropriate fee declaration or affidavit.  *Id.* at 4.  As in *Fleming*, after entry of the Sanctions Order but before any order imposing the specific monetary sanctions amount, the parties agreed to settle the case, including the compensatory sanctions.  *See* Dkt. Nos. 122; 129; 130.  At this point, the instant case diverges from *Fleming*, as Judge

Parker did not order a fee award despite the settlement—the action that the Fifth Circuit vacated in *Fleming*. *See* 529 F.3d at 640.

Given the material factual similarities, *Fleming* controls the Court's disposition of the FCR here. As in *Fleming*, Judge Parker entered a well-reasoned Sanctions Order that this Court affirmed, and the Court "should not allow a subsequent settlement to erase that language." *Id.* at 641; *see also* Dkt. Nos 101; 113. The Court will therefore not vacate the Sanctions Order as demanded by the parties to effectuate their settlement.

### A. The Court has found no plain error in the unobjected-to portions of the FCR and thus adopts those portions of the FCR.

Guillot states that he has no objection to the portion of the FCR that recommends accepting the portion of the Motion to Approve Settlement (Dkt. No. 130) that seeks the Court's approval of the parties' agreement to a compromise of the compensatory portion of the Sanctions Order. Dkt. No. 135 at 10. The Court has reviewed that unobjected-to portion of the FCR for plain error. Finding none, the Court accepts and adopts that portion of the FCR.

### B. Upon a de novo review of the recommended disposition, the Court agrees that it should not vacate the Sanctions Order.

While the parties are free to settle the compensatory aspects of the Sanctions Order, the Court will not vacate the Sanctions Order. In the parties' settlement agreement, the parties agreed to a compromise of the compensatory portion of the Sanctions Order, but they also agreed that the settlement would become effective only if the Court vacates the Sanctions Order. *See* Dkt. Nos. 130; 131 at 5–6. Guillot claims that the FCR recommends vacatur of the compensatory aspect of the Sanctions Order and that, as a result, the

Sanctions Order must be vacated in its entirety. Guillot misconstrues both the FCR and the law governing settlement of the compensatory aspect of a sanctions order.

Guillot seeks vacatur of the Sanctions Order under Federal Rule of Civil Procedure 60(b)(5)–(6). That Rule provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5)–(6). As relevant here, "compensatory sanctions may be bargained away by the parties." *Fleming*, 529 F.3d at 640. Having made such a bargain with the defendants here, Guillot contends that vacatur is appropriate because his obligation to pay attorneys' fees under the Sanctions Order has been satisfied and because the settlement otherwise justifies relief from the Sanctions Order. *See generally* Dkt. No. 135; *see also* Dkt. No. 131 at 5–6.

But "[w]hen parties agree to settle the monetary aspects of a judgment, they need not seek to vacate under Rule 60(b)(5) because the release prevents any future attempts to enforce the judgment." *Banik v. Ybarra*, 805 F. App'x 266, 268 (5th Cir. 2020); *cf. U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25, 28–29 (1994) (noting that while a district court may consider a request to vacate, mootness resulting from a settlement generally results in vacatur being inappropriate); Mary Kay Kane, 11 *Federal Practice and Procedure* § 2863 (3d ed. 2025) (same). In other words, when parties settle compensatory sanctions, they do not need relief from a court, because the settlement itself will prevent the opposing party from claiming that the compensatory sanctions have not been satisfied.

Moreover, even where parties settle financial aspects of a sanctions order, the "parties generally cannot bargain away the court's right to impose sanctions." *Fleming*, 529 F.3d at 640 (citing *Perkins v. Gen. Motors Corp.*, 965 F.2d 597, 600 (8th Cir. 1992)); *see also Banik*, 805 F. App'x at 269 (noting that a district court acts "within its discretion in refusing to wipe away the sanctions ruling" after a settlement of its compensatory aspects). Indeed, in *Fleming*, the Fifth Circuit has recognized that court "admonitions" describing sanctionable behavior "play an important role in discouraging bad behavior by litigators, and where a district court has reviewed a case of misconduct and issued a well[-]reasoned sanctions order, [courts] should not allow a subsequent settlement to erase that language." 529 F.3d at 641. Likewise, in *Banik*, the Fifth Circuit noted that even compensatory sanctions awarded to the opposing party "serve a greater purpose than transferring money" by "deter[ring] litigants and their attorneys from engaging in wrongful conduct" and creating a record that "may be useful to later courts considering sanctions against the same actors." 805 F. App'x at 269.

Guillot's first two objections rest on the argument that vacatur of the compensatory aspect of the Sanctions Order also mandates vacatur of the entire Sanctions Order. *See* Dkt. No. 135 at 11–18. But this argument rests on a faulty premise—namely, that the parties' settlement requires vacatur of the compensatory portion of the Sanctions Order. As the FCR expressly noted, if the parties wish to settle the compensatory component of the Sanctions Order—and they are free to do so—vacatur under Rule 60 is not required. Dkt. No. 133 at 6–7, 11–12; *see Banik*, 805 F. App'x at 268.

Nor is vacatur of any portion of the Sanctions Order appropriate, given that the purpose of the Sanctions Order goes beyond compensating the defendants for their

attorneys' fees. Instead, the Sanctions Order serves a broader public purpose of deterring future misconduct by the plaintiff's attorneys and other attorneys and creating a public record of the sanctionable conduct at issue and the sanctions imposed by the Court. *See id.* at 269; *Fleming*, 529 F.3d at 641. As in *Fleming*, the parties' agreement to settle the Sanctions Order's compensatory sanctions does not require vacatur of the Sanctions Order as a whole. *See* 529 F.3d at 641.

The Court thus agrees with the FCR that the Motion to Approve Settlement should be granted to the extent that the motion seeks approval—not vacatur—of the parties' settlement of the compensatory aspect of the Sanctions Order. *See* Dkt. No. 133 at 13. The Court likewise agrees with the FCR that the Motion to Approve Settlement should be denied to the extent that it seeks any vacatur of the Sanctions Order. *Id.*

### C.  The FCR correctly reasoned that the Sanctions Order includes a non-compensatory aspect by making a finding of sanctionable behavior.

Guillot's first and second objections to the FCR argue that the Sanctions Order cannot be characterized as containing anything other than a purely compensatory sanction. First, Guillot argues that the Sanctions Order is wholly compensatory because it imposed sanctions only under Federal Rule of Civil Procedure 37, which requires that an award of attorneys' fees be compensatory and not punitive. *See* Dkt. No. 135 at 11–12. Second, Guillot argues that the Sanctions Order's statements regarding Guillot's failure to comply with a court order, which the FCR characterized as punitive, is not punitive because it was mere criticism of Guillot and his attorneys rather than a finding of attorney misconduct. *See id.* at 12–18.

The Court overrules Guillot's objections. First, the Sanctions Order "included two components: (1) a finding that [Guillot's attorneys] engaged in sanctionable behavior; and

(2) a compensatory award payable to" the defendants. *Fleming*, 529 F.3d at 639. Although Guillot is correct that an award of attorneys' fees and reasonable expenses is designed to be compensatory*, see Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002), a finding that Guillot and his counsel violated a discovery order—and therefore engaged in sanctionable conduct—was a necessary prerequisite to imposing sanctions under Rule 37(b). *See* Fed. R. Civ. P. 37(b)(2)(A), (C). As *Fleming* notes, this finding is separate from the compensatory award owed to the defendants and cannot be bargained away by a settlement. 529 F.3d at 639–40. The prerequisite finding that Guillot and his counsel violated a court order does not render the Sanctions Order's award of attorneys' fees non-compensatory.

Second, in *Fleming*, the Fifth Circuit noted that "written opinions that describe attorney misconduct" are one type of "punitive sanctions mechanism[]." *Id.* at 641. In *Fleming*, the district court made a finding that the plaintiff's attorney "engaged in sanctionable behavior" by "changing the expert witness's report." *Id.* at 636, 639. The Fifth Circuit agreed that this behavior was sanctionable under Rule 16(f), which permits sanctions where an attorney "fails to obey a scheduling or other pretrial order." *Id.* at 641 (quoting Fed. R. Civ. P. 16(f)). Here, Judge Parker made an equally, if not more, express finding of sanctionable behavior, by finding that Guillot "and his counsel failed, without substantial justification, to comply with" Judge Parker's discovery order by not fully responding to discovery requests as Judge Parker had ordered. Dkt. No. 101 at 1. Although Guillot urges that orders merely "criticizing an attorney" cannot be "construed as a punitive sanction," the Sanctions Order went beyond simply admonishing Guillot and his counsel. Dkt. No. 135 at 14. Instead, Judge Parker expressly found that Guillot and his counsel violated a court order, that such conduct was sanctionable, and actually imposed sanctions. *See*

*generally* Dkt. No. 101. As in *Fleming*, this finding acts as a "punitive sanctions mechanism[]" and is thus appropriately characterized as punitive. *Fleming*, 529 F.3d at 641. Accordingly, the Court overrules Guillot's first and second objections.

**D.    Entering the Sanctions Order did not violate due process.**

Guillot's third objection argues that, if the Sanctions Order contained a punitive element, then entering the Sanctions Order violated due process. Dkt. No. 135 at 18–20. Guillot asserts that the imposition of punitive sanctions in this context required fair notice and the opportunity for a hearing on the record, but that there was insufficient notice because Judge Parker never use the word "punitive" to describe the finding that Guillot had violated a discovery order. *Id.*

Contrary to his arguments otherwise, Guillot received adequate notice and an opportunity to be heard. Although Rule 37(b)(2)(C) does not contain any specific notice or hearing requirement, Rule 37(a) generally provides that if a court compels the production of discovery, then the court must require the payment of reasonable attorneys' fees "after giving an opportunity to be heard." *See* Fed. R. Civ. P. 37(a)(5). Here, after the defendants moved for an order to show cause, Judge Parker entered a scheduling order that set a hearing date and specifically instructed Guillot and his counsel to be prepared to address whether the plaintiff violated Judge Parker's discovery order and, if so, whether Judge Parker "should impose sanctions or take disciplinary action against" Guillot or his counsel. Dkt. No. 95. Judge Parker also set a deadline for the plaintiff to respond in writing to the defendants' motion. *Id.* Guillot responded in writing to the motion. Dkt. No. 98.

Judge Parker then held a hearing on the motion for an order to show cause. *See* Dkt. Nos. 103; 105. At the hearing, Judge Parker repeatedly gave notice to the plaintiff's counsel

of his belief that Guillot and his counsel had violated the discovery order. *See, e.g.*, Dkt. No. 105 at 12 ("You violated both the letter and the spirit of that Order."), 13 ("[T]here was no attempt on behalf of you or your client to comply with that Order."), 14 ("There was a Court Order that you failed to comply with . . . ."), 18 ("[Y]our argument that you felt like you had complied, again, is just not credible."). Near the conclusion of the hearing, Judge Parker made the same express finding of sanctionable conduct that is contained in the Sanctions Order: "I find that Mr. Guillot and his counsel have failed to comply with the Court's July 3rd Order without substantial justification. The Court intends to impose sanctions for that failure." *Id.* at 22. In sum, Judge Parker afforded Guillot and his counsel the opportunity to be heard through both a written response and a hearing, and Judge Parker gave repeated notice of his intent to find that Guillot and his counsel engaged in sanctionable behavior and to impose sanctions. *See generally* Dkt. Nos. 95; 105.

   *Fleming* supports this conclusion. There, the Fifth Circuit upheld the initial sanctions order containing the finding of sanctionable behavior, which was entered after an "emergency telephone hearing" in the middle of a deposition and the district court's own review of the relevant materials. *Fleming*, 529 F.3d at 636. Here, Judge Parker afforded even greater procedural protections, giving the plaintiff nearly two weeks' notice of the hearing date, setting a briefing schedule so the plaintiff could respond to the show-cause motion, and instructing the plaintiff and his counsel in advance of what they should expect to address at the hearing (including their compliance with court orders and the possibility of sanctions or disciplinary action). Judge Parker afforded adequate process before issuing the Sanctions Order, and the Court accordingly overrules this objection to the FCR.

**E.**    **Conditioning the effectiveness of the settlement agreement on vacatur of the Sanctions Order does not present good cause for vacatur of the Sanctions Order.**

Finally, the plaintiff urges that the FCR fails to recognize that a settlement conditioned on vacatur of a sanctions order may be good cause for vacatur. *See* Dkt. No. 135 at 20–22. While that may be the case in other circuits—on whose case law the plaintiff relies for this objection, *see id.* at 20–21—the plaintiff provides no authority to suggest that conditioning a settlement on vacatur of a sanctions order presents good cause in the Fifth Circuit. To the contrary, the Fifth Circuit has expressly stated that "parties generally cannot bargain away the court's right to impose sanctions" and that "where a district court has reviewed a case of misconduct and issued a well[-]reasoned sanctions order, we should not allow a subsequent settlement to erase that language." *Fleming*, 529 F.3d at 640–41. The FCR appropriately recognized this principle. *See* Dkt. No. 133 at 8. Because a settlement is not a basis on which a court should vacate a sanctions order, the Court overrules this objection to the FCR.

**4.**    **Conclusion**

Based on the foregoing, the Court overrules the plaintiff's objections and adopts the FCR. The Court grants the Motion to Approve Settlement (Dkt. No. 130) to the extent that it seeks the Court's approval of the parties' agreement to settle the compensatory sanctions. However, the Court will not vacate the Sanctions Order (Dkt. No. 101).

The parties are ordered to confer as to whether they wish to enter into an amended settlement agreement that does not require vacatur of the Sanctions Order or if they wish to continue this litigation. The parties are ordered to file by no later than June 23, 2025, either (1) a joint stipulation of dismissal consistent with this Order, if they are able to reach an

amended settlement agreement, or (2) a joint notice that the parties wish to continue this litigation.

The Court or Judge Parker will rule on all other pending motions after receipt of the parties' joint stipulation of dismissal or joint notice.  All other pending deadlines are held in abeyance pending receipt of the parties' joint stipulation or joint notice.

So ordered on June 2, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE